McCLELLAN v. JUDGE OF RECORDER'S COURT OF DETROIT.

1. STATUTES—CONSTITUTIONAL LAW—COURTS WILL LOOK BEHIND ENROLLMENT OF ACT TO DETERMINE ITS VALIDITY.

The courts should look behind the enrollment of a statute to determine whether the records of its enactment show that in its passage the mandatory requirements of the Constitution have been observed.[1]

2. SAME—FAILURE OF HOUSE JOURNAL TO SHOW THIRD READING OF ACT FATAL.

Failure of the entries in the journal of the house of representatives to show that Act No. 99, Pub. Acts 1923, was read a third time, as required by Art. 5, § 23, of the Constitution, *held*, fatal to its validity.[2]

---

[1]Statutes, 36 Cyc. p. 972; [2]Id., 36 Cyc. p. 957.

3. SAME — HOUSE CLERK NOT AUTHORIZED TO CORRECT JOURNAL
ENTRY AFTER ADJOURNMENT.

   Since the Constitution requires each house of the legis-
   lature to keep a journal of its proceedings and publish
   the same, the responsibility therefor rests upon the house
   to see that it is properly kept, and although the clerk
   of the house could make corrections therein during the
   session, with its approval, he has no authority, after ad-
   journment, to correct the journal to show the third reading
   of a bill before its final passage.[3]

4. SAME — PRESUMPTION THAT RECORD SHOWS ALL THAT WAS
DONE.

   In view of the fact that the Constitution requires the
   house of representatives to keep a record of its proceed-
   ings and that such was done, in detail, in reference to the
   act in question, where the record fails to show its reading
   a third time, the courts will not presume that it was so
   read, but, on the contrary, will presume that all that
   occurred was recorded, and that it was not read a third
   time as required by the Constitution.[4]

5. SAME—WHERE ACT FAILED OF PASSAGE PRECEDING ACTS REMAIN
IN FORCE.

   Where Act No. 99, Pub. Acts 1923, entitled "An act for
   the suppression of gaming," is invalid because of failure
   of the house journal to show that it was read a third
   time, all preceding laws on said subject remain in force.[5]

Mandamus by Frank H. McClellan to compel
Christopher E. Stein, judge of the recorder's court
of Detroit, to issue a warrant under Act No. 99, Pub.
Acts 1923.   Submitted October 28, 1924.   (Calendar
No. 31,693.)   Writ denied December 10, 1924.

*Paul W. Voorhies*, Prosecuting Attorney, and *Edwin
S. Bartlett*, Assistant Prosecuting Attorney, for plain-
tiff.

*Ormond F. Hunt*, for defendant.

STEERE, J.   This is a mandamus proceeding brought
against Christopher E. Stein, a judge of the recorder's

[3]Statutes, 36 Cyc. p. 958; [4]Id., 36 Cyc. p. 974; [5]Id., 36 Cyc. p.
975 (1926 Anno).

court of the city of Detroit, on petition of Frank H. McClellan, an officer of the metropolitan police department of that city, to test the constitutionality of Act No. 99, Pub. Acts 1923, entitled "An act for the suppression of gaming."

On Monday, October 6, 1924, McClellan laid before the prosecuting attorney of Wayne county the facts which he claimed to have discovered on the previous Saturday evening, October 4th, showing that certain individuals had been guilty of violating the provisions of the act in question. A recommendation for a warrant was given him by the prosecutor together with a form of complaint and warrant charging violation of the act, which he presented to defendant for the purpose of making a complaint and having a warrant issue based on the violation of said act. Defendant refused to entertain the complaint and issue a warrant, assigning as a reason therefor that the act in question was unconstitutional. Acting under direction of the prosecuting attorney, who appeared as his counsel, McClellan then made application to this court for an order to show cause why a writ of mandamus should not issue requiring the said complaint to be entertained. An order to show cause was issued and return made by defendant admitting the proceedings as alleged, and stating his only reason for refusal to entertain said complaint was the unconstitutionality of Act No. 99, Pub. Acts 1923.

Most of the provisions of this act have been upon our statute books for more than half a century and few of the numerous grounds of unconstitutionality alleged in the return and stated in defendant's brief present any meritorious questions. The ground calling for most serious consideration at this time is the claim pressed in the brief of defendant's counsel that the entire Act No. 99 is invalid because never passed by the house of representatives in compliance

with the constitutional requirement that it should be read three times in each house before its final passage. To sustain that proposition defendant's counsel points to and relies on the records of the house of representatives as they stood, and had been printed and published, at the close of the regular session of 1923.

Introductory to that issue, it may be noted that our legislative department is a creature of the Constitution, with its duties, powers and limitations well defined. Article 5 of that fundamental law is devoted to the subject. Providing that the legislative power of the State is vested in a senate and house of representatives, with many mandates and restrictions not material here, Article 5 plainly provides in mandatory terms as follows:

Section 15 states that:

"Each house except as otherwise provided in this Constitution shall choose its own officers and determine the rules of its proceedings," * * * .

Section 16 requires that:

"Each house shall keep a journal of its proceedings and publish the same," * * *

Section 22 provides that:

"No bill shall be altered or amended on its passage through either house so as to change its original purpose."

Section 23 requires that:

"Every bill shall be read three times in each house before the final passage thereof. No bill shall become a law without the concurrence of a majority of all the members elected to each house. On the final passage of all bills the vote shall be by yeas and nays and entered on the journal."

Under the powers conferred upon it by the Constitution the legislature in prescribing the duties of the secretary of the senate and clerk of the house of

representatives during the interim of sessions of the legislature, provided (1 Comp. Laws 1915, § 17):

"The secretary of the senate and the clerk of the house of representatives, at the close of each regular or special session of the legislature, shall compile and prepare for publication, make indexes to, and superintend the publication of the journals and documents of the senate and house of representatives respectively." * * *

On convening the house of representatives of the regular legislative session of 1923 chose its own officers, determined upon and adopted the rules of its proceedings. These rules, over 70 in number, follow for the most part the customary forms adopted by such bodies. Amongst other things they provide for keeping, making up and completing the house journal, in conformity to its rules, "making such corrections therein from day to day as may be necessary" and for daily publication thereof.

House Rule No. 59 provides in part:

"Every bill shall receive three several readings previous to its passage. The first and second readings may be by its title only, but the third reading shall be in full, unless otherwise ordered by the house, and on a day subsequent to that on which it receives its second reading or passed the committee of the whole house. No bill shall be passed until it has been printed and in the possession of the house for at least five days." * * *

While the method of first and second reading by title has been criticized as not in strict conformance with the constitutional provision upon the subject, in view of the customary legislative rule and practice of supplying each member with a printed copy at least five days before passage of any bill, this court has declined to hold invalid laws so passed where the journal showed the third reading was in full. The

question was disposed of in *Hart* v. *McElroy*, 72 Mich. 446 (2 L. R. A. 609), in part as follows:

"The legislative practice of reading the same twice by title, and only once at length, has been maintained too long in this State to be now overthrown by the courts.  *  *  *  The Constitution, in terms, does not direct that the reading shall be at length, and, while such reading might be the better practice, we cannot hold that it is imperatively required that it should be so read more than once.   This act, as it passed, was read once in each house at length, as appears from the journals."

Unfortunately the journal of the house in the instant case, as made up, completed from day to day and daily printed and published until the close of the regular session of the legislature, fails to show that Act No. 99 was read in full before the house on its final passage, or at any other time.

Beginning with *Green* v. *Graves*, 1 Doug. 351, it has long been held in this State that the court may, and when forced upon its notice by proper proceedings should, look behind the enrollment of a statute to determine whether the records of its enactment show that in its passage the mandatory requirements of the Constitution have been observed.

"We have heretofore uniformly held, in this State, that the courts would take cognizance of the journals of the legislature, and look into them, for the purpose of determining whether the methods of the Constitution have been followed in the passage of laws, considering that the safety and permanency of our institutions would be best promoted by such holding." *Rode* v. *Phelps,* 80 Mich. 598.

*Vide,* also, *Detroit Common Council* v. *Board of Assessors,* 91 Mich. 78 (16 L. R. A. 59).

The bound volumes of "House Journal, 1923," as compiled, indexed and prepared for publication at the close of the legislative session of that year by the secretary of the senate and clerk of the house, and

published by authority, show that Act No. 99, Pub. Acts 1923, p. 129, had its legislative origin as senate bill No. 56 and was on March 9th transmitted to the house with a message reporting that it had passed the senate. It was then read in the house a first and second time by its title and referred to the committee of State affairs. Later reported out favorably by that committee it was placed on order of third reading. It was next called up on April 19th and the following proceedings recorded:

"Mr. Woodruff moved that the rules be suspended and that Senate bill No. 56 (file No. 23)—A bill for the suppression of gaming, be placed on its immediate passage. The motion prevailed, two-thirds of all the members present voting therefor. The question being on the passage of the bill. The bill was then passed, a majority of all the members-elect voting therefor, by yeas and nays as follows:"—2 House Journal, p. 822.

The same entry appears in the printed copy of the journal of that date as officially published at the time and distributed as provided by rule. It was the same in the "official journal" permanently kept amongst the records of that department and so remained long after the close of that legislative session. That journal now shows such entry, but with a type-written rider attached changing the entry to read as follows:

"Mr. Woodruff moved that the rules be suspended and that Senate bill No. 56 (file No. 23), entitled A bill for the suppression of gaming, be placed on its immediate passage. The motion prevailed, two-thirds of all the members present voting therefor. The bill was then read a third time and passed, a majority of all the members-elect voting therefor by yeas and nays, as follows."

Though not appearing in the record, it is said in defendant's brief, and not disputed, that an affidavit of the clerk of the house served upon defendant's counsel

229—Mich.—14.

after the pleadings were closed stated that said clerk caused the alteration found in the journal to be made on or about March 7, 1924, after his attention had been called to the error in that entry by an article in a newspaper relative to the constitutionality of said Act No. 99.

The Constitution of this State requires each house, not its clerk, to keep a journal of its proceedings and publish the same.    While authority is given to choose a clerk who for it and under its supervision could properly be given charge of its journal, with the clerical duty of recording and publishing its proceedings as directed, the responsibility rested on the house to see that its journal was properly kept, and its proceedings duly recorded and published in compliance with constitutional mandate.    Its rule requiring the clerk to make up, complete and daily publish its journal was a legitimate means to that end, as it provided each member daily with full information upon the state of the journal, but it did not in any sense relieve the house of the authority and duty to keep a journal of its proceedings and see that they were correctly recorded and published during the session. Undoubtedly the clerk with approval or under direction of the house could make corrections in the journal before final close of the session (*People, ex rel. Attorney General,* v. *Burch,* 84 Mich. 408), but no express or implied authority exists for him to do so after the house is dissolved by final adjournment and the official journal which it kept during the session has been closed.    The change made in the entry in question by direction of the clerk, though honestly done in the belief that he had such authority, was an unwarranted interpolation of the journal without legal effect.

It is true that in some jurisdictions decisions go far in holding that where the legislative records are silent as to various requirements being observed they will

presume the legislature has done what it should do, and excerpts from some of the opinions of this court can be found pointing in that direction, but in cases which involved other controlling essentials more particularly dwelt upon. To follow such rule of presumption to its logical conclusion, in practical effect leaves it optional with the legislature to follow the course expressly commanded by the Constitution in passing a bill, and makes the journal a bulwark behind which constitutional mandates may be ignored. If silence upon the subject is sufficient and a statute must be presumed valid unless it affirmatively appears by the legislative journal that some constitutional requirement was disregarded, all the legislature need do is to record in its journal the final vote showing the bill passed, and presumptions do the rest. It is safe to suggest that the legislature would seldom affirmatively record in its journal that it had failed to comply with any constitutional requirement.

The object of these requirements of the Constitution is to guard against hasty and impulsive legislation by giving each member opportunity and time to familiarize himself with and maturely consider the wisdom of a proposed law, and also to give the public time and opportunity to know what legislation is proposed and being enacted by their law-making body. The manifest important purpose of requiring the legislature to keep a journal is that the people whom they represent may be able to learn whether a published law has in truth been constitutionally enacted, and to have a permanent and reliable primary record evidencing its validity.

Justice COOLEY in his work on Constitutional Limitations (7th Ed.), 200, note 1, in commenting on an Ohio decision holding the constitutional requirements for reading a bill directory only, said in part:

"But the rule respecting three separate readings on different days is specific and capable of being precisely

complied with, and we do not see how, even under the rules applied to statutes, it can be regarded as directory merely, provided it has a purpose beyond the mere regular and orderly transaction of business. That it has such a purpose, that it is designed to prevent hasty and improvident legislation, and is therefore not a mere rule of order, but one of protection to the public interests and to the citizens at large, is very clear; and independent of the question whether definite constitutional principles can be dispensed with in any case on the ground of their being merely directory, we cannot see how this can be treated as anything but mandatory."

The Constitution in no uncertain terms directs the legislature to keep a record of its proceedings. If such record does not show that the constitutional requirements have been observed in enactment of the laws of the country, what was its purpose and why was it required to be kept? This court early held that resort could be had to such journal to ascertain whether the law had been enacted in accordance with constitutional requirements. In harmony with such holding our legislative bodies have by long usage and settled practice recorded in their journals the succeeding steps of a bill from its introduction until final passage as a law, showing amongst other things how many times read and at what stage of the proceedings, thus in practical application construing it as mandatory that the journal should disclose observance of all constitutional requirements. An old and stereotyped form of entry frequently appearing in this and other house journals is that the bill "was read a third time and passed, a majority of all the members-elect voting therefor," etc. This journal as kept according to long established practice assumes to give in detail the various steps taken in the enactment of this law. If any presumptions arise in that connection they are that all which occurred was recorded. It does not show that the act was passed in mode prescribed by

the Constitution. We can indulge in no presumption that it was, but are bound by the journal as it reads. We are therefore constrained to hold the law invalid, which leaves all preceding laws upon that subject in force.

The writ will be denied, without costs to either party.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.