HOOVER, APPELLEE AND CROSS-APPELLANT, *v.* BOARD OF COUNTY COMMISSIONERS, FRANKLIN COUNTY, OHIO, ET AL., APPELLANTS AND CROSS-APPELLEES.

[Cite as Hoover *v.* Bd. of Franklin Cty. Commrs. (1985), 19 Ohio St. 3d 1.]

(No. 84-401—Decided August 9, 1985.)

*Topper, Alloway, Goodman, DeLeone & Duffey, N. Victor Goodman, John Duffey* and *John F. Stock,* for appellee and cross-appellant.

*Michael Miller,* prosecuting attorney, *Joan G. Robinson* and *James R. Kirk,* for appellants and cross-appellees Board of County Commissioners and County Hospital Commission.

*Robert L. DeVictor,* for appellant and cross-appellee Jess Howard Electric Co.

*Anthony Celebrezze, Jr.,* attorney general, and *Richard A. Green,* for *amici curiae,* Ohio General Assembly, Ohio Governor and Ohio Director of Development.

CLIFFORD F. BROWN, J.

I

The first issue posed by the instant cause is whether the validity of a statute may be challenged on the basis that the bill from which it originated was considered fewer than three times on three different days in each house of the legislature. We hold that where it can be proven that the bill in question was not considered the required three times, the consequent enactment is void and without legal effect.

Section 15(C), Article II of the Ohio Constitution provides in part:

"Every bill shall be considered by each house on three different days, unless two-thirds of the members elected to the house in which it is pending suspend this requirement, and every individual consideration of a bill or action suspending the requirement shall be recorded in the journal of the respective house. * * *"

In *Miller* v. *State* (1854), 3 Ohio St. 475, this court first addressed the question of the validity of a statute which had allegedly been enacted in violation of the "three reading" requirement. In that case, we refused to look beyond the enrolled bill to determine compliance with the requirement. "[W]here the journals show that a bill was passed, and there is nothing in them to show that it was not read as the constitution requires, the presumption is that it was so read, and this presumption is not liable to be rebutted by proof. * * *" *Id.* at 484. Thus, a rule evolved whereby the

three-reading requirement was viewed as merely "directory," such that compliance by the General Assembly was a matter for enforcement by that body and not by judicial interference. This approach was adopted in subsequent cases dealing with other provisions of Article II relating to the procedures for passing enactments. See, *e.g., Pim* v. *Nicholson* (1856), 6 Ohio St. 176; *State, ex rel. Atty. Gen.,* v. *Covington* (1876), 29 Ohio St. 102, paragraph seven of the syllabus.[2]

However, it must be noted that *Miller, supra,* concerned the former Section 16, Article II of the Ohio Constitution, which read in pertinent part: "Every bill shall be fully and distinctly read, on three different days, unless, in case of urgency, three-fourths of the house in which it shall be pending, shall dispense with this rule. * * *"

In 1973 the above provision was amended and the current version, embodied in Section 15(C), was adopted. Significantly, language was added to the effect that "* * * every individual consideration of a bill * * * *shall be recorded in the journal* of the respective house * * *." (Emphasis added.) Thus, by constitutional mandate, there now exists an inherently reliable immediate source by which the legislature's compliance may be readily ascertained without any undue judicial interference. As a result of the new provision, there is no need to look anywhere but at the journals to determine whether the proper procedure has been followed. Cf. *Leach* v. *Brown* (1957), 167 Ohio St. 1, 8-9 [3 O.O.2d 346] (Taft, J., concurring).

The presumption of propriety in the passage of enactments which arises from the silence of the legislative journals cannot exist where the Constitution, as here, specifically mandates that the procedure be recorded in the journals. *Bradley Lumber Co.* v. *Cheney* (1956), 226 Ark. 857, 295 S.W. 2d 765. The obvious purpose of maintaining a journal is to provide a source for ascertaining that the proper procedure was followed in enacting a bill, as proof of its validity. See *McClellan* v. *Judge of Recorder's Court* (1924), 229 Mich. 203, 201 N.W. 209.

Therefore, as a result of the 1973 amendment of former Section 16, adding a requirement that each of the three considerations of a bill be recorded and entered into the legislative journal, our holding in *Miller, supra,* is no longer controlling. We now hold that where the Ohio Constitution mandates that a recordation be made in the legislative journals reflecting that a particular step in the enactment process had been taken, the absence of entries to that effect renders the enactment invalid.

The complaint of plaintiff in the instant cause must now be examined to determine if it may withstand a motion to dismiss for failure to state a claim upon which relief can be granted. In order for a court to dismiss a cause of action on such grounds, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to

---

[2] Both of these decisions were recently modified in *State, ex rel. Dix,* v. *Celeste* (1984), 11 Ohio St. 3d 141.

recovery. *O'Brien* v. *University Community Tenants Union* (1975), 42 Ohio St. 2d 242 [71 O.O.2d 223], syllabus.

Plaintiff alleged in Count II of his complaint that Am. Sub. S.B. No. 109, which subsequently became R.C. 140.051, did not receive consideration by the Senate on three different days as required by Section 15(C), Article II of the Ohio Constitution. According to the complaint, S.B. No. 109 was originally introduced to the Senate of the 113th General Assembly on March 14, 1979 to amend R.C. 2919.21 and to enact R.C. 2919.211 pertaining to criminal non-support. With minor amendments, the bill, which then became Am. S.B. No. 109, received three hearings in the Senate and was passed in that house. On June 17, 1980, the House of Representatives received Am. S.B. No. 109 from the Senate and on June 18 referred it to the Judiciary Committee. On November 19, 1980, the committee reported back to the House of Representatives a substitute bill, *completely different in content* from Am. S.B. No. 109 passed by the Senate. This bill proposed to amend R.C. 140.01 and to enact R.C. 140.051 "to facilitate the financing, acquisition and construction of hospital and health care facilities for the use of non-profit entities." Before this bill was taken up for consideration for the third time, it was again amended to add a provision for the Ohio licensure of Canadian physicians without examination.

Based on these facts, plaintiff alleged that Am. Sub. S.B. No. 109 "was enacted by the Legislature of the State of Ohio in a manner violative of the prescription of Article II, Section 15(C) of the [Ohio] Constitution * * *," in that "Am. Sub. S.B. No. 109, as passed by the House of Representatives on November 24, 1980, was entirely different in title and subject matter from Am. S.B. No. 109, as passed by the Senate on June 12, 1980," and thus, the bill "did not receive consideration by the Senate on three different days. * * *"

From the foregoing it appears that plaintiff would be entitled to relief if he can prove the facts alleged in his complaint, *i.e.,* that Am. Sub. S.B. No. 109 was in fact enacted without the requisite three considerations in each house. Therefore, plaintiff must be afforded an opportunity to demonstrate if he can that the legislative journal does not reflect the requisite three considerations in each house of the bill in the form in which it was eventually enacted. We note at this juncture that amendments which do not vitally alter the substance of a bill do not trigger a requirement for three considerations anew of such amended bill. *Miller, supra,* at 482. But, "[w]hen the subject or proposition of the bill is thereby wholly changed, it would seem to be proper to read the amended bill three times, and on different days * * *." *Id.*

In accordance with the foregoing, therefore, we hereby affirm that portion of the court of appeals' judgment which held that plaintiff's complaint did state a cause of action under Section 15(C), Article II of the Ohio Constitution. We therefore remand the cause to the trial court for further proceedings consistent with this opinion which shall entail a hearing to

determine whether Am. Sub. S.B. No. 109 had, pursuant to Section 15(C) of Article II, been considered on three separate days, or there had been a lawful waiver thereof.

## II

The next question presented for review is whether the validity of an enactment may be challenged on the basis that the original bill contained more than one subject in violation of Section 15(D), Article II of the Ohio Constitution. The court of appeals held that no enactment may be attacked on this basis, as the "one-subject" provision of Section 15(D) has been consistently viewed as merely directory rather than mandatory. We disagree and reverse.

Under this court's recent holding in *State, ex rel. Dix,* v. *Celeste* (1984), 11 Ohio St. 3d 141, a "manifestly gross and fraudulent violation" of the one-subject rule contained in Section 15(D) will invalidate an enactment. *Id.* at syllabus. As we emphasized in *Dix,* every presumption in favor of the enactment's validity should be indulged. The mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics. However, where there is a blatant disunity between topics and no rational reason for their combination can be discerned, it may be inferred that the bill is a result of log-rolling — the practice by which several matters are consolidated in a single bill for the purpose of obtaining passage for proposals which would never achieve a majority if voted on separately. This is the very practice which Section 15(D) was designed to prevent.

With these principles in mind, we must now examine Count I of plaintiff's complaint to determine whether this cause of action was properly dismissed under Civ. R. 12(B)(6). We again emphasize that a complaint is not subject to dismissal for failure to state a claim for relief unless it appears to a certainty that plaintiff can prove no set of facts entitling him to recovery. *O'Brien, supra.*

Plaintiff alleged in his complaint that Am. Sub. S.B. No. 109, by which R.C. 140.051 was enacted, "is in contravention of the prescription [*sic*] of Article II, Section 15(D) of the Constitution of the State of Ohio that no bill shall contain more than one subject. * * * [The bill] contains provisions relating to two distinct subjects, namely, the subject of financing, acquiring, and constructing hospital and health care facilities, and the enitirely [*sic*] distinct subject of the licensure of a licentiate of the medical council of Canada."

It is apparent from the foregoing that if plaintiff can prove that the bill actually contains two subjects and those subjects are in fact so distinct that their combination defies rationality, he will be entitled to relief in the form of a judgment declaring R.C. 140.051 invalid. Thus, it was error for the trial court to grant defendants' motion to dismiss the complaint for failure to state a claim upon which relief can be granted pertaining to the

one-subject provision of Section 15(D), Article II of the Ohio Constitution. We therefore reverse the judgment of the court of appeals as to Count I of plaintiff's complaint and remand the cause to the trial court for further proceedings consistent with this opinion which shall entail a hearing to determine whether such bill had only one subject pursuant to Section 15(D), Article II of the Ohio Constitution.

Considerations of policy supporting the stability of legislative enactments require that today's decision have prospective application only and shall not apply to any existing contracts, and rights and duties flowing therefrom. The validity of other statutes enacted prior to the date of this decision shall not be affected.

*Judgment affirmed in part,*
*reversed in part and*
*cause remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

HOLMES and DOUGLAS, JJ., concur separately.

HOLMES, J., concurring. I concur in the judgment and discussion within the majority opinion relating to the mandatory nature of Section 15(C), Article II of the Ohio Constitution, in that plaintiff stated a claim upon which relief could be granted concerning the allegation that R.C. 140.051 was enacted in violation of such constitutional provision. In addition, I concur in the conclusion that plaintiff also stated a justiciable claim that R.C. 140.051 was enacted in violation of Section 15(D) of Article II. However, my reasons therefor vary somewhat from that of the majority.

It is my view that both Sections 15(C) and (D) of Article II should be interpreted by the courts as I believe the framers of the Constitution intended; that is, as they are written. In this regard, I believe that this court's previous renditions to the effect that such sections shall be viewed as directory, rather than mandatory, have been misinterpretations of the Constitution.

The more reasonable reading of any constitutional provision, whether it affects personal rights, legislative procedures, jurisdiction of the courts, or any other matter concerning our state, its governmental functions, or its citizens, is that the provision was established to be mandatorily followed within reasonable limitations.

Accordingly, it has been my continuing view that the constitutional provisions in question should be considered mandatory upon the legislative body of our state, but interpreted in a reasonable and liberalized manner with the public policy aim being to arrive at a judicial conclusion short of

presenting a head-on conflict between the legislative and judicial processes of our government.

While Ohio is the only state to hold the one-subject provision directory, all other courts addressing this issue have adopted a common technique to reduce judicial interference with legislative action. These jurisdictions liberally construe their mandatory constitutional provisions so as not to hamper the legislature by making the laws unnecessarily restrictive in their scope and operation. See Ruud, "No Law Shall Embrace More Than One Subject" (1958), 42 Minn. L. Rev. 389, 393-394. This standard is an accurate interpretation of the provisions as written and also provides the legislature with some latitude to enact comprehensive legislation.

Having been a member of the General Assembly for a number of years, I truly respect and, hopefully, understand the legislative process, and have no intent to undermine the necessary freedoms of that process. However, a reasonable adherence to the provisions of Sections 15(C) and (D) of Article II by the General Assembly should occasion little or no conflict or adverse review by the judicial system of Ohio.

I was able to concur in the recent judgment of this court in *State, ex rel. Dix,* v. *Celeste* (1984), 11 Ohio St. 3d 141, because even under a mandatory application of Section 15(D), Article II, a reasonable interpretation of the statute under consideration there would call for the conclusion that no violation of the one-subject provision was present. With the statute under consideration here, I reach another conclusion.

I, therefore, concur in the judgment of the majority in its remand of the cause for the determination of the issues upon the law pronounced herein, and also concur that such determinations may only be applied prospectively, and not to any existing contracts, and rights and duties flowing therefrom.

DOUGLAS, J., concurring. I concur in the majority opinion. I write additionally to make the point that in holding, today, for the first time, pursuant to Section 15, Article II of the Ohio Constitution, that a recordation be made in the legislative journals to indicate that a particular step in the enactment process has taken place and that the absence of such entries renders the enactment invalid, this court has taken a great stride in safeguarding the rights and opportunities of the citizens of Ohio to participate in the legislative process. Specifically, the purpose of the "three reading" rule is to prevent hasty action and to lessen the danger of ill-advised amendment at the last moment. The rule provides time for more publicity and greater discussion and affords each legislator an opportunity to study the proposed legislation, communicate with his or her constituents, note the comments of the press and become sensitive to public opinion. Adherence to this rule will help to ensure well-reasoned legislation.

Even though the objectives of the "three reading" rule are laudable, the constitutional provision nonetheless recognizes that everyday realities

may necessitate immediate consideration of a bill. Section 15(C), Article II provides that "[e]very bill shall be considered by each house on three different days, unless two-thirds of the members elected to the house in which it is pending suspend this requirement * * *." This provision provides the mechanism for the legislature to act, when necessary, in rapid fashion conditioned only on receiving the concurrence of two-thirds of its membership.

While to some the requirement we announce today will seem to be cumbersome in nature, it need not be when handled routinely. More importantly, the constitutional provision is there to be observed and obeyed — not ignored.

Furthermore, I concur in the majority's position that the decision rendered today have prospective application only. Consistent with what has been termed the *Sunburst* Doctrine, state courts have, in recent cases, recognized and used prospective application of a decision as a means of avoiding injustice in cases dealing with questions having widespread ramifications for persons not parties to the action. (See *Great Northern Ry. Co.* v. *Sunburst Oil & Refining Co.* [1932], 287 U.S. 358, and its progeny.)

However, I am firmly convinced that the rule enunciated in this case should also have application to the parties in this action. Such an approach finds widespread support. See, *e.g., Molitor* v. *Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E. 2d 89 (and cases cited therein); *Holytz* v. *Milwaukee* (1962), 17 Wis. 2d 26, 115 N.W. 2d 618; *Smith* v. *State* (1970), 93 Idaho 795, 473 P. 2d 937.

Indeed, the parties to this appeal should not be the recipients of a Pyrrhic victory. If this court were to merely announce this new rule without applying it, such announcement could be considered mere *dictum*. See *Molitor* v. *Kaneland Community Unit District No. 302, supra; Kitto* v. *Minot Park District* (N.D. 1974), 224 N.W. 2d 795, 804. Application of this decision to the parties in this action will not only remove this decision from the status of *obiter dictum,* it will also serve, in keeping with our system of private enforcement of legal rights, to reward the present parties for their industry, expense, and effort for having given to this court the opportunity to rid the body of our law of an unjust rule. *Id.; Becker* v. *Beaudoin* (1970), 106 R.I. 562, 573, 261 A. 2d 896, 902.

The resolution of issues having broad public interest should be encouraged. As was stated in *Willis* v. *Dept. of Conservation & Economic Dev.* (1970), 55 N.J. 534, 541, 264 A. 2d 34, 38, "* * * case law is not likely to keep up with the needs of society if the litigant who successfully champions a cause is left with only that distinction."