THE STATE, EX REL. ALEXANDER ET AL., APPELLANTS, *v.* BROWN, SECRETARY OF STATE, ET AL., APPELLEES.

(No. 87AP-596—Decided June 28, 1988.)

*Philip M. Monogg,* for appellants.
*Anthony J. Celebrezze, Jr.,* attorney general, and *Cherry Lynn Poteet,* for appellees.

BOWMAN, J. On February 4, 1986, Governor Celeste signed Am. Sub. S.B. No. 54, which included among its provisions R.C. 4513.263(B) that mandates the use of seat belts for occupants of the front seat of a motor vehicle. On the same day, appellant, James Alexander, submitted a proposed referendum petition to the Attorney General for approval, pursuant to R.C. 3519.01.

On February 24, 1986, the Attorney General found the petition con-

tained a fair and truthful summary of the bill to be repealed and forwarded the petition to the Secretary of State. On March 5, 1986, the Secretary of State, as required by R.C. 3519.05, certified that the text of the statute to be repealed was accurately set forth in the petition.

On May 5, 1986, the last day for filing the referendum petition, appellant attempted to file a petition while acknowledging in a cover letter that the petition contained insufficient signatures. Appellant requested an additional twenty-nine days to gather additional signatures, that being the amount of time that appellant alleges was used by the Attorney General and Secretary of State to approve and certify the petition. The request was refused.

On August 12, 1986, appellant filed a complaint in the Franklin County Court of Common Pleas seeking a writ of mandamus to compel the Secretary of State to grant an additional twenty-nine days to obtain more signatures and for a judgment declaring R.C. 3519.01, 3519.05 and 4513.263 unconstitutional.

Appellees filed a motion to dismiss on the basis of laches which was sustained as to the mandamus portion of the complaint on January 6, 1987.[1] The court stated in its decision:

"* * * In light of the fixed statutory schedule for the preparation of ballots, and the immutability of Election Day, the mandamus portion of Relators' complaint must be dismissed on grounds of laches. The motion to dismiss is SUSTAINED as to the mandamus action."

Appellees filed a motion to reconsider to which appellant failed to respond and although the court sustained the motion to dismiss the

declaratory judgment it expressed some doubt as to the constitutionality of R.C. 3519.01 and 3519.05. The court stated in its decision:

"* * * Upon reconsideration, the Court finds that any decision it could render in this matter would be advisory in nature, as the only election which could have been affected by Relators' complaint is past and as such is now moot. * * *"

Appellant sets forth the following assignment of error:

"The Trial Court erred in sustaining Respondent-Appellees' motion to dismiss Relator-Appellants' declaratory judgment portion of their complaint."

Section 1c, Article II of the Ohio Constitution provides as follows:

"The second aforestated power reserved by the people is designated the referendum, and the signatures of six per centum of the electors shall be required upon a petition to order the submission to the electors of the state for their approval or rejection, of any law, section of any law or any item in any law appropriating money passed by the general assembly. No law passed by the general assembly shall go into effect until ninety days after it shall have been filed by the governor in the office of the secretary of state, except as herein provided. When a petition, signed by six per centum of the electors of the state and verified as herein provided, shall have been filed with the secretary of state within ninety days after any law shall have been filed by the governor in the office of the secretary of state, ordering that such law, section of such law or any item in such law appropriating money be submitted to the electors of the state for their approval or rejection, the secretary of state shall submit to the electors of the state for their approval or rejection such law, section or item, in the manner herein provided, at the next succeeding regular or general

---

[1] Appellant has not appealed this decision.

election in any year occurring subsequent to sixty days after the filing of such petition, and no such law, section or item shall go into effect until and unless approved by a majority of those voting upon the same. If, however, a referendum petition is filed against any such section or item, the remainder of the law shall not thereby be prevented or delayed from going into effect. (Adopted September 3, 1912.)"

Thus, any law enacted by the General Assembly becomes effective ninety days after filing by the Governor with the Secretary of State unless a referendum petition is filed, and if such a petition is filed the issue must be submitted at the next general election which occurs after sixty days following filing of the petition, in this instance November 4, 1986.

R.C. 3519.01 requires any person who seeks to file a referendum petition to submit a written petition signed by one hundred voters containing the law to be voted on at the referendum election, as well as a summary of the law, to the Attorney General, who must certify the petition if he finds the summary to be a fair and truthful statement of the matter. If so, the petition, summary and Attorney General's certificate are filed with the Secretary of State, who, pursuant to R.C. 3519.05, must certify that the text of the statute to be repealed is accurately set forth in the petition.

It is appellant's contention that because the time required to perform the duties imposed on the Attorney General and Secretary of State by R.C. 3519.01 and 3519.05 takes away from the time allowed to obtain signatures on a referendum petition, the statutes infringe upon the right of referendum granted under Section 1c, Article II of the Ohio Constitution, and are therefore unconstitutional. It is appellant's further contention that because the statutes infringed on the time in which to file a referendum petition, R.C. 4513.263(B) was unconstitutionally enacted and is void. Appellant does not argue that R.C. 4513.263(B) is unconstitutional on its face or as applied.

In election cases, time is a critical factor and extreme diligence and promptness are required to assert an alleged violation of the state's election laws. In *State, ex rel. Schwartz,* v. *Brown* (1964), 176 Ohio St. 91, 26 O.O. 2d 438, 197 N.E. 2d 801, the court stated:

"* * * Under the circumstances here, where time is such an important factor, extreme diligence and the promptest of action were required on the part of relator. The unexplained lack of diligence on the part of relator deprives him of the relief he seeks. * * *" *Id.* at 91-92, 26 O.O. 2d at 438, 197 N.E. 2d at 802.

In this instance, appellant knew as of the date the petitions were attempted to be filed, May 5, 1986, there were insufficient signatures but still waited over two months before filing suit. Rather than filing an original action in mandamus in the Ohio Supreme Court or in this court to compel the granting of an additional twenty-nine days to gather signatures, and raising the constitutionality of R.C. 3519.01 and 3519.05, appellant filed in common pleas court, where the appeal process and final determination of the issue would extend well past the date of the election. By the time appellant filed suit, R.C. 4513.263 had already become law.

Once the election was held on November 4, 1986, the issues in this case became moot. Although *State, ex rel. Gongwer,* v. *Graves* (1914), 90 Ohio St. 311, 107 N.E. 1018, was an action in mandamus rather than declaratory judgment, the analysis and reasoning applies to relator's action for declaratory judgment. The Ohio

Supreme Court held, in paragraph seven of the syllabus:

"Where it is admitted that 20,000 names signed to a petition requesting the submission of a law passed by the general assembly of this state to the approval or rejection of the electors of the state, are forged by the circulators, and within ten days thereafter additional names are tendered to the secretary of state and rejected by him, *and no action in mandamus is brought to compel the secretary of state to accept the additional names until a time so near the next general election,* occurring more than sixty days after the filing of such referendum petition, *that issue cannot be joined and the cause heard and determined in time to submit such question to the electors of the state at such election, a court is powerless to afford the relator relief,* even though it should appear that the secretary of state abused his discretion in rejecting the additional petition." (Emphasis added.)

The court further stated, at 327-328, 107 N.E. at 1023-1024:

"There is another reason why no relief could be given to the relator in this last case. The constitution requires the secretary of state to submit a law to the electors for their approval or rejection at the next general election occurring more than sixty days after the filing of the referendum petitions. In this case that would be the November election of 1913. These additional names were tendered to the secretary of state within ten days after he found against the validity of the original petitions. *If the secretary of state abused his discretion, or was guilty of any fraud in the rejection of these additional names, it was the duty of the relator to apply forthwith to a court of competent jurisdiction to compel the secretary by mandamus to perform the duty imposed upon him by the constitution and submit this question to the electors at the general election specified in the constitution itself. The relator, by delaying to file his petition* for a writ of mandamus until a day or two before that election, *could not delay the law from going into operation for a year next after the general election specified in the constitution.* This last petition was not filed until October 24, 1913, and by no possibility could issue be joined or the matter heard and determined by this court in time for a writ of mandamus to issue commanding the secretary of state to do and perform the duties required of him by the constitution of the state. Before such a writ could issue the election designated by the constitution, at which this question must be submitted, would have passed into history and the secretary could not comply with the commands of such writ; so that, whether the action of the secretary of state in this case was right or wrong, the relator acquiesced in it until too late for this court or any other court to afford him the relief asked." (Emphasis added.)

As discussed above, appellant's delay in filing suit made it impossible for final determination of the issues raised to be made before the November 1986 election, the election at which the referendum should have been submitted to the voters.

Appellant also argues that, even if it was too late to place the issue on the ballot, the case was not moot and declaratory judgment was proper because R.C. 4513.263(B) was unconstitutionally enacted. In *Hoover* v. *Bd. of Franklin Cty. Commrs.* (1985), 19 Ohio St. 3d 1, 19 OBR 1, 482 N.E. 2d 575, the court held a complaint stated a claim for relief, and hence dismissal was improper, where it was alleged a bill was passed without being considered three times on three different days in each house of the legislature as required by Section

15(C), Article II of the Ohio Constitution.

In *Hoover, supra,* the court held at the syllabus:

"Where the Ohio Constitution mandates that a recordation be made in the legislative journals reflecting that a particular step in the enactment process has been taken, the absence of entries to that effect renders an enactment invalid."

The court further stated:

"* * * Thus, by constitutional mandate, there now exists an inherently reliable immediate source by which the legislature's compliance may be readily ascertained without any undue judicial interference. As a result of the new provision, there is no need to look anywhere but at the journals to determine whether the proper procedure has been followed. * * *

"The presumption of propriety in the passage of enactments which arises from the silence of the legislative journals cannot exist where the Constitution, as here, specifically mandates that the procedure be recorded in the journals. * * * The obvious purpose of maintaining a journal is to provide a source for ascertaining that the proper procedure was followed in enacting a bill, as proof of its validity. * * *

"* * * We now hold that where the Ohio Constitution mandates that a recordation be made in the legislative journals reflecting that a particular step in the enactment process had been taken, the absence of entries to that effect renders the enactment invalid." (Citations omitted.) *Id.* at 4, 19 OBR at 3-4, 482 N.E.2d at 578-579.

In this instance, the record, however, is not silent. On the face of the record, everything required to be done by the Ohio Constitution was done to effect proper enactment of R.C. 4513.263(B). There is no allegation that R.C. 4513.263(B) did not receive sufficient votes, or was not read three times in each house, or was not properly filed and signed.

Likewise, looking to the record of the Secretary of State, there is nothing to show a valid referendum petition was filed, or subsequent to May 5, 1986 was ever attempted to be filed. The record only reflects an attempt to file a petition which, by appellant's own admission, was not in compliance with the requirements of the Ohio Constitution and thus the effect is the same as if no petition was ever filed. Inasmuch as *Hoover* stands for the proposition that a court will not look beyond the records as to a legislative enactment, there is nothing to support appellant's claim that the seat belt law was invalidly enacted.

While appellant can challenge the constitutionality of the seat belt law, either on its face or as applied to him in an action in declaratory judgment, appellant cannot claim the law was improperly enacted where the record shows all the constitutionally mandated procedures were followed.

Appellant was fully aware of the signature requirements on the referendum petitions and simply delayed too long to bring these issues properly before the court. Appellant's assignment of error is overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

McCORMAC and BRYANT, JJ., concur.