DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Williams County Court of Common Pleas which found that R.C.4123.931 was constitutional and that appellee, the Ohio Turnpike Commission ("OTC"), had a valid and enforceable right of subrogation in the amount of $313,182.82 against the proceeds of appellant's settlement of $620,000 with the involved insurance companies. For the following reasons, we affirm the decision of the trial court.
On July 31, 1997, Richard Lee Yoh was a passenger in a motor vehicle operated by Duane E. Cisek, both employees of OTC acting in the scope of their employment. Both Yoh and Cisek exited the vehicle to perform maintenance work near the off ramp for Exit 2 of the Ohio Turnpike. Both were struck and killed by an oncoming vehicle operated and owned by Kevin Schlachter. Yoh was survived by his wife and administratrix of his estate, Patsy Yoh (appellant), and four children, one of whom was still a minor.
At the time of the accident, OTC was a self-insured employer for purposes of workers' compensation benefits. As such, OTC was a statutory subrogee within the meaning of R.C. 4123.931. Pursuant to R.C. 4123.59, appellant and her minor child received workers' compensation benefits as a result of Yoh's death.
In addition to workers' compensation, the parties had insurance. Schlachter had motor vehicle liability insurance with Progressive Preferred Insurance Company ("Progressive"). OTC had motor vehicle insurance, including uninsured and underinsured coverage, with Continental Casualty Company ("Continental") that covered OTC employees acting in the course and scope of their employment. OTC also had an umbrella liability insurance policy with American Guaranty and Liability Insurance Company, aka Zurich American Insurance Group ("American Guaranty"), which included excess uninsured and underinsured motorist coverage for OTC employees acting in the course and scope of their employment. Appellant sued Schlachter, Continental, American Guaranty and OTC, claiming Schlachter's actions were negligent.
On behalf of the decedent and the surviving members of his family, appellant sought damages for injuries, including pain and suffering, mental anguish and terror, lost past and future wages, medical and funeral expenses, property damage, and loss of consortium. OTC filed a cross-claim against Continental and American Guaranty and filed a third-party complaint against Progressive. OTC asserted that, pursuant to R.C. 4123.391, it had a subrogation lien against any proceeds of the action. Appellant alleged that OTC's subrogation lien, pursuant to R.C. 4123.931, for workers' compensation benefits paid to appellant was unconstitutional and unenforceable.
OTC and appellant filed motions for summary judgment concerning the constitutionality of R.C. 4123.931. In appellant's motion, filed September 29, 1998, appellant made numerous arguments, such as, the subrogation statute, R.C. 4123.931, (1) did not apply to compensation paid on account of an employee's death; (2) violated Section 35, Article II of the Ohio Constitution; (3) violated the "impairment of contract" clause of the Ohio Constitution; (4) violated the "privileges and immunities" clause of the Ohio Constitution; (5) constituted an invalid, coercive waiver of workers' compensation benefits; (6) was fundamentally unfair; (7) violated plaintiff's rights of privacy and marriage; and (8) violated the "remedy by due course of law" clause of the Ohio Constitution insofar as the "estimated future value of compensation" had to be determined and paid from the proceeds of a settlement or verdict.
OTC responded to appellant's motion and argued that appellant's motion should be denied because: (1) the estate of Richard Yoh was not a workers' compensation claimant and, there fore, had no standing to challenge the subrogation rights of OTC; and (2) the subrogation statute (R.C. 4123.931) applied to all workers' compensation benefits including death benefits. OTC also moved for summary judgment in its behalf on the basis that (1) OTC had an enforceable subrogation interest pursuant to R.C. 4123.931; and (2) equity required recognition of OTC's subrogation interest.
On January 13, 1999, the trial court granted OTC's motion for summary judgment and denied appellant's motion. The trial court held that R.C. 4123.931 was constitutional and that OTC had a valid subrogation interest. The trial court further held that the value of OTC's subrogation interest would be determined at a later time.
On May 28, 1999, the trial court entered its final judgment entry. According to the trial court, appellant ultimately settled with Progressive, Continental and American Guaranty in the total amount of $620,000. Schlachter and the insurance companies were therefore dismissed with prejudice. With respect to OTC's subrogation interest, the trial court found that, through April 1, 1999, OTC had paid $38,087.41 in benefits, comprised of $3,200 in funeral expenses, $50 in medical expenses, and $400.43 per week since August 20, 1997, in death benefits. The trial court further found that the "estimated future value of compensation" was $275,095.41. The trial court made the following order with respect to the proceeds awarded OTC for future compensation payments:
 "This amount, if reimbursed to OTC from the proceeds of the settlement, will be deposited in and allocated to OTC's administrative fund for the payment of general expenses, including workers' compensation benefits, as they become due."
Appellant timely appealed the trial court's ruling and raises the following issues in her assignment of error:
"I. ASSIGNMENT OF ERROR
 "The Trial Court Erred In Granting Appellees' Motion For Summary Judgment And Denying Appellant's Motion For Summary Judgment Concerning The Validity And Constitutionality Of O.R.C. § 4123.931.
 "A. O.R.C. § 4123.931 Violates Article II, Section 35
Of The Ohio Constitution.
 "B. O.R.C. § 4123.931 Limits Damages Recoverable For Death In Violation Of Article I, Section 19a Of The Ohio Constitution.
 "C. O.R.C. § 4123.931 Mandates The Taking Of Property Without Compensation In Contravention Of Article I, Section 19 Of The Ohio Constitution.
 "D. O.R.C. § 4123.931 Denies Injured Employees Their `Remedy By Due Course Of Law' In Violation Of Article I, Section 16 Of The Ohio Constitution.
 "E. O.R.C. § 4123.931 Violates The `Due Process' Requirement Of The 14th Amendment To The United States Constitution.
 "F. As Part Of Am.Sub.H.B. 278, O.R.C. § 4123.931
Violates Article II, Section 15(D) Of The Ohio Constitution.
 "G. O.R.C. § 4123.931's Right Of Subrogation For `Estimated Future Values Of Compensation' Violates Article I, Section 16 Of The Ohio Constitution.
 "H. O.R.C. § 4123.931 Is An Unlawful Impairment Of Contract In Violation Of Article II, Section 28 Of The Ohio Constitution.
 "I. O.R.C. § 4123.931 Violates The `Privileges Or Immunities' Clause Of Article I, Section 2 Of The Ohio Constitution.
 "J. O.R.C. § 4123.931 Constitutes A Waiver Under O.R.C. § 4123.80.
 "K. O.R.C. § 4123.931 Violates Plaintiff's Rights Of Privacy And Marriage.
 "L. O.R.C. § 4123.931 Does Not Apply To Workers' Benefits Paid On Account Of An Employee's Death.
"M. O.R.C. § 4123.931 Is Fundamentally Unfair.
 "N. In Re Estate Of Ross Is Inapposite And Distinguishable."
The issue in this case concerns the constitutionality of R.C. 4123.931. R.C. 4123.931[1] states that the payment of workers' compensation benefits creates a right of subrogation in favor of a self-insuring employer, such as OTC, against a third party. The subrogation interest "includes past payments of compensation and medical benefits and estimated future values of compensation and medical benefits arising out of an injury to or disability or disease of a claimant." R.C. 4123.931(A).
Upon reviewing the trial court's decision of the parties' motions for summary judgment, we must apply the same standard as the trial court. Lorain Natl. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 129. Accordingly, summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
Initially, we note that legislative enactments are presumed constitutional. Adamsky v. Buckeye Local School Dist.
(1995), 73 Ohio St.3d 360, 361; R.C. 1.47(A). This presumption is rebuttable. However, before a court can declare a statute unconstitutional, it must appear beyond a reasonable doubt that the statute violates a constitutional provision. State ex rel.Dickman v. Defenbacher (1955), 164 Ohio St. 142, paragraph one of the syllabus. See, also, Fabrey v. McDonald Police Dept. (1994),70 Ohio St.3d 351, 352.
The purpose of the workers' compensation law is set forth in Section 35, Article II, Ohio Constitution, which states in part:
 "For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages, for such death, injuries, or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational disease. * * *"
According to the Ohio Supreme Court, the Workers' Compensation Act ("Act") "operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common law defenses and are protected from unlimited liability." Blankenship v. Cincinnati Milacron Chem. (1982),69 Ohio St.2d 608, 614.
The Act, however, was not designed to provide complete compensation for injured employees. Id. See, also, State, exrel. Crawford, v. Indus. Comm. (1924), 110 Ohio St. 271, 275. For instance, under the Act, injured employees are unable to recover damages for pain and suffering, loss of consortium, or for punitive damages. Blankenship at 614-615.
 I. Section 35, Article II, Ohio Constitution
Appellant initially argues that R.C. 4123.931 violates Section 35, Article II of the Ohio Constitution. Specifically, appellant argues that R.C. 4123.931 "effectively deprives employees of the `benefit of the bargain' and destroys the balance struck between employers and employees" because it allows a self-insuring employer to recover one hundred percent of the compensation and benefits it paid to an injured employee while continuing to enjoy immunity from suit. Appellant also argues that R.C. 4123.931 forces the plaintiff to choose between remedies although the constitution guarantees him the right to both. Appellant further argues that R.C. 4123.931 is contrary to the express language of Section 35, Article II of the Ohio Constitution, insofar as the section states "[f]or the purpose of providing compensation to [workers] and their dependents, * * * laws may be passed * * *." (Emphasis added.) Appellant asserts that the statute does not provide compensation, but rather takes it away.
Section 35, Article II of the Ohio Constitution states that laws may be passed to determine the "terms and conditions" upon which workers' compensation benefits shall be made. R.C.4123.931 requires that a self-insured employer must be reimbursed from the proceeds that are recovered from a third-party tortfeasor for amounts the employer paid and will pay in the form of workers' compensation benefits. R.C. 4123.931 does not interfere with the employers' initial obligation to pay workers' compensation benefits. Rather, the statute merely prevents the employee/beneficiary from receiving a double recovery for the same damages. Insofar as R.C. 4123.931 specifies a term and condition concerning how funds are to be distributed, we find that the statute does not violate Section 35, Article II of the Ohio Constitution.
With respect to the "bargain" between employers and employees, we also find that R.C. 4123.931 does not violate Section 35, Article II of the Ohio Constitution. Employers are still required to provide workers' compensation benefits at the onset. And, although employers may recoup the entire amount they paid in workers' compensation benefits from the tortfeasor, in the end, the employees/beneficiaries still have received all the compensation and medical benefits to which they are entitled. The issue is not whether the amounts representing compensation and medical benefits comes from the employer's pocket or the tortfeasor's pocket, but whether appellant received those benefits. R.C. 4123.931 does not interfere with appellant's receipt of those benefits.
Furthermore, we disagree with appellant's argument that R.C. 4123.931 forces the plaintiff to choose between remedies. The Workers' Compensation Act does not provide for employees or beneficiaries to be compensated for damages such as pain and suffering, loss of consortium, etc. As such, in order to recover these other damages, the only available remedy is from the tortfeasor. Accordingly, we find not well-taken appellant's arguments concerning the alleged violation of Section 35, ArticleI of the Ohio Constitution.
 II. Sections 16, 19, 19a, Article I, Ohio Constitution
In an effort to avoid repetition of our analysis, we will attempt to consolidate several of appellant's other arguments. Appellant argues that OTC should not be subrogated to the entire amount of her settlement with the tortfeasor because to do so violates several of her constitutional rights. Specifically, appellant argues that R.C. 4123.931 limits the damages recover able in a wrongful death action, in violation of Section 19a, Article I, Ohio Constitution; denies her a remedy by due course of law, in violation of Section 16, Article I, Ohio Constitution and the Fourteenth Amendment to the United States Constitution; and constitutes a taking, in violation of Section 19, Article I, Ohio Constitution.
We initially note that the only appellate court that has considered these identical arguments found them not well-taken. See In re Estate of Ross (1997), 116 Ohio App.3d 402. Appellant argues that Ross is inapposite and distinguishable from the case at hand because she raised in her appeal more issues than were addressed in Ross. We, however, find that Ross is persuasive and applicable insofar as it addresses appellant's arguments.
Appellant argues that R.C. 4123.931 reduces the amount of her settlement with the tortfeasor, which she asserts limits the amount she can receive for her wrongful death action and constitutes a taking. We disagree.
R.C. 4123.931 does give employers a subrogation interest in beneficiaries' wrongful death claims. However, this interest neither limits the amount of damages beneficiaries are entitled to receive in wrongful death cases nor constitutes a taking. Rather, R.C. 4123.931 merely prevents beneficiaries from recovering twice, once from the employer and once from the tortfeasor, for the same damages. As stated above, regardless of an employer's subrogation rights, beneficiaries nevertheless fully recover the amount of damages to which they are entitled for lost compensation and medical expenses. Moreover, beneficiaries are fully entitled to any damages obtained from the tortfeasor, in excess of the amount paid by the employer for compensation and medical benefits, for damages incurred as a result of pain and suffering, loss of consortium, or the like. Accord Ross, supra at 406-407.
Additionally, appellant argues that R.C. 4123.931 denies her rights to a meaningful remedy by due course of law and due process, and that it constitutes a taking, because it states that "[t]he entire amount of any settlement or compromise of an action or claim is subject to the subrogation right of a statutory subrogee." Appellant argues that this allows employers to be subrogated to amounts that are not actually awarded for compensation and medical expenses.
Although the entire amount of any award or judgment is presumed to represent compensation and medical benefits that are subject to a statutory subrogee's subrogation rights, R.C.4123.931(D) allows claimants to obtain "a special verdict or jury interrogatories indicating that the award or judgment represents different types of damages." As such, by allowing the jury to designate the nature of the award, the funds to which a self-insured employer is subrogated can be limited to the amount of damages that actually represents compensation and medical benefits. Accordingly, because R.C. 4123.931 allows for such a designation, we find that R.C. 4123.391 does not violate appellant's rights to a meaningful remedy by due course of law or due process, or that it constitutes a taking.
As support of her argument, appellant relies heavily on the analysis in Sorrell v. Thevenir (1994), 69 Ohio St.3d 415, wherein the Ohio Supreme Court found R.C. 2317.45 to be unconstitutional. R.C. 2317.45 required the entire jury award against the tortfeasor to be reduced by collateral source benefits, regardless of whether the collateral benefits were actually duplicated in the jury's verdict. The Ohio Supreme Court held that this allowed trial courts to enter judgments in disregard of the jury's verdict, thereby violating one's right to jury trial, due process, equal protection, and meaningful remedy. Unlike R.C. 2317.45, R.C. 4123.931 allows a plaintiff to obtain a special verdict designating the nature of the award, thus limiting the amount to which the statutory subrogee can be subrogated. Accordingly, we find that Sorrell is factually distinguishable from the case at hand and, therefore, its analysis is unpersuasive.
We note that no designation of damages is available when settling with a tortfeasor; nevertheless, unlike R.C. 2317.45, appellant could have sought a special verdict at trial. Moreover, appellant knew when she settled with the tortfeasor that she was foregoing her ability to have the damages designated as anything other than compensation and medical benefits and that the entire settlement amount would be subjected to OTC's subrogation interest. Appellant must have taken these factors into consideration when agreeing upon a settlement amount.
Appellant additionally argues that the rationale for R.C. 4123.931, to avoid a double recovery, is no longer a valid purpose. According to appellant, Am.Sub.H.B. No. 350, Ohio's Tort Reform Act, "will substantially reduce, if not eliminate, the risk of a double recovery by injured employees." Am.Sub.H.B. No. 350, however, was declared unconstitutional in toto. Stateex rel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451. We therefore find appellant's arguments in this regard not well-taken.
 III. Estimated Future Values of Compensation and Benefits
Appellant asserts that the portion of R.C. 4123.931 that grants a statutory subrogee a subrogation interest in "estimated future values of compensation and medical benefits" is unconstitutional because it constitutes a taking and violates her rights to a remedy by due course of law and to privacy.
 a. Taking
With respect to appellant's taking issue, we note that there may exist a potential problem with respect to the "estimated future values of compensation and medical benefits" aspect of R.C. 4123.931. For instance, OTC will receive in a lump sum the entire estimated future amount it is supposed to pay to appellant and her minor child. The statute, however, fails to specify what is to be done with any remainder of this sum once OTC is no longer required to pay workers' compensation, such as, if appellant remarries or dies. The entire amount could be paid in the form of workers' compensation benefits, in which case there arguably would be no taking issue because the beneficiaries would have received the full amount of compensation and medical benefits to which they were entitled. However, if OTC's obligation to pay workers' compensation benefits expired with money still remaining in the pool of funds obtained through R.C. 4123.931, then OTC arguably would have a windfall if it was not required to release the remainder to appellant or her estate.
We find, however, that because this situation has not yet arisen, the matter is not ripe for our consideration. Therefore, we specifically hold that, although the argument may potentially arise at a later time, we reach no determination on the merits as to the constitutionality of R.C. 4123.931 insofar as it grants statutory subrogees a right of subrogation with respect to estimated future compensation and medical benefits. Accordingly, we find that R.C. 4123.931 does not violate Section19, Article I of the Ohio Constitution with respect to reimbursement of workers' compensation benefits that were already paid by the employer to the beneficiary; however, we make no finding with respect to this issue as it concerns the award and distribution of estimated future compensation and medical benefits.
 b. Remedy by Due Course of Law
With respect to the right of subrogation for "estimated future values of compensation and medical benefits," appellant argues that it denies her a remedy by due course of law, in violation of Section 16, Article I of the Ohio Constitution. Appellant asserts that "future lost wages are only recoverable in civil action upon proof of reasonable certainty and must be reduced to present value." Whereas, R.C. 4123.931 creates a right of recovery for "estimated future values of compensation and medical benefits * * *," which, appellant asserts, is not defined in R.C. Chapter 4123, thereby leaving "to the total discretion each self-insured employer to decide how the `estimated future value' of compensation should be determined." Further, appellant argues:
 "[T]he criteria used to predict future lost wages in a civil action are entirely different from the criteria utilized to calculate workers' compensation death benefits. In this case, for example, plaintiff's claim for future lost wages was based upon Richard Yoh's future projected earnings and his work-life expectancy. However, the value of estimated future workers' comp payments is, per statute, based upon Richard Yoh's prior earnings, the life (not work-life) expectancy of plaintiff (not Richard Yoh) and the possibility of plaintiff's remarriage."
Initially, we note that, contrary to appellant's assertion, the court, not the self-insured employer, determines what constitutes "estimated future values of compensation and medical benefits." Nevertheless, the phrase "estimated future values of compensation and medical benefits" is not defined in the statute. Undefined words used in a statute must be accorded their usual, normal, or customary meaning. State ex rel. Hawkins v.Pickaway Cty. Bd. of Elections (1996), 75 Ohio St.3d 275, 277; R.C. 1.42. Accordingly, we find that it is within the trial court's discretion to calculate and determine the "estimated future values of compensation and medical benefits." We there fore find that, even though R.C. 4123.931 does not set forth the formula for determining the estimated future value of benefits, it does not violate Section 16, Article I of the Ohio Constitution, because it provides for a remedy by due course of law.
In this case, the "estimated future values of compensation and medical benefits" were calculated by determining the present value of the amount of future benefits to be paid. Todd Starker, expert for OTC, testified that this amount was deter mined by multiplying $400.43 (the current weekly amount of workers' compensation benefits received) by six hundred eighty-seven (the annuity factor assigned to a forty-seven year old surviving spouse from the actuarial tables of the BWC). Starker further testified that the annuity factor of six hundred eighty-seven included the statistical likelihood of remarriage. Based on this computation, Starker testified that the estimated future value of compensation and medical benefits totaled $275,095.41. Appellant offered no other method of computation in opposition. Accordingly, we find that the method of calculation used by the trial court in this case to determine the "estimated future values of compensation and medical benefits" was reasonable.
 c. Right to Privacy
Appellant argues that R.C. 4123.931 violates appellant's rights of privacy and marriage, in violation of the Fourteenth Amendment to the United States Constitution. Appellant asserts that freedom to marry has long been recognized as one of the basic civil rights of man and is a fundamental "right of privacy" implicit in the Due Process Clause. Appellant argues that R.C. 4123.931 interferes with her right to marry because, in order to receive the full amount of the estimated future values of compensation and benefits recovered by OTC from the tortfeasor, appellant will have to remain unmarried.
We noted above that there is a potential taking issue with respect to the award for "estimated future values of compensation and medical benefits." However, because that situation has not yet arisen, we found that the issue was not yet ripe for our review. Likewise, insofar as there is no evidence that appellant has remarried or that any remarriage has caused her to lose a portion of the funds recovered by OTC pursuant to R.C. 4123.931, we find that this issue is also not ripe for our review. Accordingly, we specifically do not reach a decision with respect to appellant's argument that R.C. 4123.931 violates her rights of privacy and marriage.
 IV. One Subject Rule Section 15(D), Article II, Ohio Constitution
Appellant argues that R.C. 4123.931 violates Section15(D), Article II of the Ohio Constitution, which states in part:
 "(D) No bill shall contain more than one subject, which shall be clearly expressed in its title. * * *"
Specifically, appellant asserts that Am.Sub.H.B. No. 278, which included R.C. 4123.931, was "primarily an appropriations bill for BWC funds and accounts" and established "detailed reporting requirements, procedures and functions for the Bureau and its various divisions." As such, appellant argues that there clearly is no common purpose or relationship between these enactments and R.C. 4123.931.
Appellant compares Am.Sub.H.B. No. 278 with Am.Sub.H.B. No. 117, which was found to violate the one-subject rule of Section 15(D), Article II, Ohio Constitution. See Simmons-Harrisv. Goff (1999), 86 Ohio St.3d 1. In determining that Am.Sub.H.B. No. 117 violated the one-subject rule, the Ohio Supreme Court held:
 "It is obvious that none of the first six provisions of Am.Sub.H.B. No. 117 has any thing to do with the School Voucher Program. Am.Sub.H.B. No. 117 contains many other examples of topics that `lack a common purpose or relationship.' [Footnote omitted.] Am.Sub.H.B. No. 117 contained three hundred eighty-three amendments in twenty-five different titles of the Revised Code, ten amendments to renumber, and eighty-one new sections in sixteen different titles of the Revised Code."
The first six provisions of Am.Sub.H.B. No. 117 included topics concerning: the residency of certain elected officials; entitlement of certain government entities to contract for private operation of correctional facilities; confidentiality of certain ethics committee files; requirement of candidates for elective office to file financial statements with the Ethics Commission; creation of a joint legislative committee on federal funds; and requirement that certain state agencies submit proposals to that committee.
With respect to Section 15(D), Article II, Ohio Constitution, the Ohio Supreme Court stated as follows:
 "* * * we have adopted the position that `the one-subject provision is not directed at plurality but at disunity in subject matter.' [State ex rel. Dix v. Celeste
(1984), 11 Ohio St.3d 141, 146]. See, also, State ex rel. Hinkle v. Franklin Cty. Bd. of Elections (1991), 62 Ohio St.3d 145, 148, * * *. Thus, `the mere fact that a bill embraces more than one topic is not fatal, as long as a common purpose or relationship exists between the topics.' [Hoover v. Franklin Cty. Bd. of Commrs. (1985), 19 Ohio St.3d 1, 6]; [State ex rel. Ohio AFL-CIO v. Voinovich (1994), 69 Ohio St.3d 225, 229]. However, `when there is an absence of common purpose or relation ship between specific topics in an act and when there are no discernible practical, rational or legitimate reasons for combining the provisions in one act, there is a strong suggestion that the provisions were combined for tactical reasons, i.e., logrolling. Inasmuch as this was the very evil the one-subject rule was designed to prevent, an act which contains such unrelated provisions must necessarily be held to be invalid in order to effectuate the purpose of the rule.' Dix, 11 Ohio St.3d at 145, * * *. See, also, Beagle v. Walden (1997), 78 Ohio St.3d 59, 62, * * *; Hinkle, supra, 62 Ohio St.3d at 148-149, * * *; Hoover, supra, 19 Ohio St.3d at 6, * * *." State ex rel. OATL v. Sheward (1999), 86 Ohio St.3d 451, 496-497.
In contrast to Am.Sub.H.B. No. 117, Am.Sub.H.B. No. 278 concerned only workers' compensation matters. Am.Sub.H.B. No. 278 amended five sections of existing workers' compensation law:
 1. R.C. 4121.62, entitled "Contracts for rehabilitation services; obtaining federal funds; rehabilitation division; fees; Camera center fund";
 2. R.C. 4123.32, entitled "Rules for administering state insurance fund";
 3. R.C. 4123.35, entitled "Payment of premiums; certificate of payment; granting of self-insuring employer status; self-insured construction projects";
 4. R.C. 4123.511, entitled "Notice to claim ant and employer; information from other persons; investigations; orders; administrative appeals; repayment schedule"; and
5. R.C. 4123.93, entitled "Definitions."
In addition, Am.Sub.H.B. No. 278 enacted a new workers' compensation section, R.C. 4123.931, entitled "Subrogation right of statutory subrogee against third party". We find that although Am.Sub.H.B. No. 278 addressed a variety of workers' compensation issues, there is a common relationship between the topics. SeeSheward, supra, citing Hoover, supra. Accordingly, we find not well-taken appellant's argument concerning the alleged violation of the one-subject rule, Section 15(D), Article II, Ohio Constitution.
 V. Impairment of Contract Section 28, Article II, Ohio Constitution
Appellant next argues that R.C. 4123.931 is an unlawful impairment of contract in violation of Section 28, Article II of the Ohio Constitution, which states:
 "The general assembly shall have no power to pass retroactive laws, or laws impairing the obligation of contracts; but may, by general laws, authorize courts to carry into effect, upon such terms as shall be just and equitable, the manifest intention of parties, and officers, by curing omissions, defects, and errors, in instruments and proceedings, arising out of their want of conformity with the laws of this state."
Specifically, appellant asserts that, pursuant to Section 35, Article II of the Ohio Constitution, there is a contractual agreement between employers and employees of Ohio. Employers agreed that they would pay, without proof of fault, reasonable compensation to employees injured on the job. In exchange for that promise, the employees agreed that employers would be immune from suit for tort liability. Appellant argues:
 "Now, however, the subrogation statute has imposed a very material and unilateral change upon that constitutional contract. The statute requires injured employees to repay all benefits received from their employers if the employees exercise their fundamental right to seek damages from third parties. In that event, however, the employers do not relinquish their immunity. Very clearly, the subrogation statute imposes an unlawful and one-sided impairment upon the contract of employment."
Generally, the rights conferred by statute are not contractual by nature and, therefore, do not preclude subsequent legislative modification or abrogation. In considering whether a statute creates an unconstitutional impairment of contract in violation of Section 28, Article II of the Ohio Constitution, the Ohio Supreme Court held as follows:
 "In analyzing whether a statute violates the Contract Clause, `generally, we first ask whether the change in state law has "operated as a substantial impairment of a contractual relationship."' Gen. Motors Corp. v. Romein
(1992), 503 U.S. 181, 186, * * * quoting Allied Structural Steel Co. v. Spannaus (1978), 438 U.S. 234, 244, * * *. `This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.' Romein, 503 U.S. at 186, * * *.
 "In determining whether a contractual relationship exists in the first instance, we are mindful that a state legislative enactment may be deemed a contract for purposes of the Contract Clause only if there is a clear indication that the legislature has intended to bind itself in a contractual manner. Natl. RR. Passenger Corp. v. Atchison, Topeka Santa Fe Ry. Co. (1985), 470 U.S. 451, 465-466, * * *. Accordingly, we begin with a presumption that, absent a clearly stated intent to do so, statutes do not create contractual rights that bind future legislatures. Id. Courts have coined the phrase `unmistakability doctrine' for this legal principle. See, e.g., McGrath v. Rhode Island Retirement Bd. (C.A.1, 1996), 88 F.3d 12, 19, citing United States v. Winstar Corp. (1996), 518 U.S. 839, * * *. The requirement inherent in the unmistakability doctrine that "`the government's obligation unmistakably appear thus serves the dual purposes of limiting contractual incursions on a State's sovereign powers and of avoiding difficult constitutional questions about the extent of state authority to limit the subsequent exercise of legislative power."' Parker v. Wakelin (C.A.1, 1997), 123 F.3d 1, 5, quoting United States v. Winstar Corp., 518 U.S. at 875, * * *. The unmistakability doctrine is useful not only in determining whether a contractual relationship exists, but also in `defining the contours' of any contractual obligation that is found to exist. Atchison, 470 U.S. at 466, * * *."
State ex rel. Horvath v. State Teachers Retirement Bd. (1998),83 Ohio St.3d 67, 76.
Although Section 35, Article II of the Ohio Constitution, creates a system that provides mutual benefit to both employer and employee, neither the Ohio Constitution, nor R.C.4123.35, concerning an employer's obligation to make premium payments into the workers' compensation fund, contain a clear intent to create contractual rights that bind future legislatures. See Horvath, supra. To the contrary, Section 35, ArticleII, Ohio Constitution, specifically grants the legislature the authority to create a state workers' compensation fund and todetermine the terms and conditions of such a fund. Accordingly, insofar as there is no contractual relationship, we find that R.C.4123.931 is not an unlawful impairment of contract, in violation of Section 28, Article II of the Ohio Constitution.
 VI. Privileges or Immunities Section 2, Article I, Ohio Constitution
Appellant argues that R.C. 4123.931 violates Section 2, Article I of the Ohio Constitution, which states that "no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly." Specifically, appellant asserts that the subrogation statute constitutes a special immunity because it allows OTC to recover one hundred percent of the workers' compensation benefits paid, yet still maintain immunity.
Appellant's argument is nonsensical because Section 35, Article II of the Ohio Constitution, grants employer immunity for participating in workers' compensation system, not R.C. 4123.931. Notwithstanding, appellant's argument fails because R.C. 4123.931
does not state that it "may not be altered, revoked, or repealed by the general assembly." See Section 2, Article I, Ohio Constitution. Accordingly, we find appellant's argument not well-taken.
 VII. Unlawful Waiver of Benefits
Appellant next argues that R.C. 4123.931 constitutes a waiver pursuant to R.C. 4123.80. Appellant asserts that R.C.4123.931 "functions as a waiver of an injured employee's right to receive and retain workers' [compensation] benefits" because it forces appellant to make a choice to "either receive and retain workers' [compensation] benefits without pursuing a civil action against third parties for damages, or pursue damages against third parties and waive the right to retain benefits previously paid and to receive future benefits owed."
R.C. 4123.80 states that "[n]o agreement by an employee to waive his rights to compensation under this chapter is valid," except under certain circumstances which do not apply herein. As stated above, R.C. 4123.931 only acts to reimburse employers for the amount of compensation and medical benefits that they have already paid or will pay in the future. As such, even though an employer is subrogated to the amounts it paid or will pay, the beneficiaries nevertheless will have received the full value of workers' compensation benefits to which they are entitled. Accordingly, we find that R.C. 4123.931 does not require any waiver of a beneficiary's right to receive workers' compensation benefits.
 VIII. Application to Death Benefits
Appellant next argues that R.C. 4123.931 does not apply to benefits paid on account of an employee's death. R.C.4123.931(A) states, in pertinent part: "A statutory subrogee's subrogation interest includes past payments of compensation and medical benefits and estimated future values of compensation and medical benefits arising out of an injury to or disability ordisease of a claimant." (Emphasis added.) Appellant argues that because "death" is not specifically listed, the subrogation interest does not include damages arising as a result of death.
With respect to rules of statutory construction, the Supreme Court of Ohio has stated:
 "A number of basic rules must be followed by a reviewing court in construing the regulations and statutes at issue. First, all statutes which relate to the same general subject matter must be read in pari materia. See Maxfield v. Brooks (1924), 110 Ohio St. 566 * * *; State, ex rel. Bigelow, v. Butterfield (1936), 132 Ohio St. 5, * * *.
 And, in reading such statutes in pari materia, and construing them together, this court must give such a reasonable construction as to give the proper force and effect to each and all such statutes. Maxfield v. Brooks, supra. The interpretation and application of statutes must be viewed in a manner to carry out the legislative intent of the sections. See Benjamin v. Columbus (1957), 104 Ohio App. 293, * * * affirmed (1957), 167 Ohio St. 103, * * *; In re Hesse (1915), 93 Ohio St. 230, * * *. All provisions of the Revised Code bearing upon the same subject matter should be construed harmoniously. State v. Glass (1971), 27 Ohio App.2d 214, * * *; State v. Hollenbacher (1920), 101 Ohio St. 478, * * *. This court in the interpretation of related and co-existing statutes must harmonize and give full application to all such statutes unless they are irreconcilable and in hope less conflict. Couts v. Rose
(1950), 152 Ohio St. 458, * * *.
Johnson's Markets, Inc. v. New Carlisle Dept. of Health (1991),58 Ohio St.3d 28, 35.
R.C. 4123.931 does not specifically state that it applies to compensation awarded for death; however, when construed together with statutes of the same general subject matter,i.e. workers' compensation, we find that a statutory subrogee must also have a subrogation interest in compensation paid as a result of death. R.C. 4123.93(A) defines "claimant" as "a person who is eligible to receive compensation or medical benefits under this chapter or Chapter 4121., 4127., or 4131. of the Revised Code, including any dependent or person whose eligibility is the result of an injury to or occupational disease of another per son." (Emphasis added.) A "dependent" is only entitled to receive workers' compensation benefits upon the death of a covered employee. See, e.g., R.C. 4123.54. Accordingly, insofar as a statutory subrogee has a subrogation interest in benefits paid to a "claimant," we find that R.C. 4123.391 applies in instances of death. To construe the statute otherwise would create an absurd result.
Sallach v. United Airlines, Inc. (1997), 121 Ohio App.3d 89, held that the subrogation rights created by former R.C.4123.93 did not include a right of subrogation for payments made for wrongful death or survivorship claims. We find, how ever, that Sallach is distinguishable on the facts. Former R.C. 4123.93
stated that a self-insuring employer was "subrogated to all the rights of [the] employee against a third-party tortfeasor." (Emphasis added.) Because a wrongful death claim is a claim belonging to the wrongful death statutory beneficiaries, and not the decedent employee, the court held that the employer did not have a right of subrogation in such instances. To the contrary, R.C. 4123.931 specifies that, rather than an "employee," the statutory subrogee is subrogated to the amount of benefits paid to a "claimant," which specifically includes dependents. Unlike an "employee," a dependent can be a party to a wrongful death action. Accordingly, insofar as the wording between former R.C. 4123.93
and current R.C. 4123.931 are dissimilar, we find that the rationale in Sallach is inapplicable to the present subrogation statute.
 IX. Fundamentally Unfair
Appellant next asserts that R.C. 4123.931 is fundamentally unfair because: (1) self-insured employers are not required to pay a share of the attorney fees and court costs incurred as a result of the litigation against the third-party tortfeasor; and (2) "it forces injured employees to take their actions against negligent third parties to trial rather than negotiate a reason able settlement."
We disagree with appellant's arguments. First, R.C.4123.93(E) states that "[s]ubrogation does not apply to the portion of any judgment, award, settlement, or compromise of a claim to the extent of a claimant's attorney's fees, costs, orother expenses incurred by a claimant in securing the judgment,award, settlement, or compromise, or the extent of medical, surgical, and hospital expenses paid by a claimant from the claimant's own resources for which reimbursement is not sought." (Emphasis added.) Hence, amounts paid for attorney's fees, costs, and other expenses are automatically deducted from the amount that is subject to subrogation. Moreover, we find that R.C. 4123.931
is not fundamentally unfair because, despite the statute, appellant would be responsible for fronting the litigation expense of an action brought against a tortfeasor.
Second, we find that R.C. 4123.931 does not force injured employees/beneficiaries to try, rather than settle, their actions against third-party tortfeasors. Appellant, like all claimants, had a choice to try her case and have the jury deter mine what portion of the award against the tortfeasor represented compensation and medical benefits, or settle and take into consideration, when agreeing on a settlement amount, that OTC would be subrogated to a portion of her settlement. There are advantages and disadvantages to either scenario; however, we find that R.C. 4123.931 is not fundamentally unfair because the decision whether to settle or try the case is left to appellant.
 X. Conclusion
Accordingly, we find appellant's sole assignment of error, and her fourteen sub-parts, not well-taken. As such, we find that the trial court did not err in granting summary judgment in favor of OTC. On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Williams County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _____________________________ Richard W. Knepper, P.J.
Peter M. Handwork, J., Melvin L. Resnick, J. CONCUR.
[1] R.C. 4123.931 states in part:
 "(A) The payment of compensation or benefits pursuant to this chapter or Chapter 4121., 4127., or 4131., of the Revised Code creates a right of subrogation in favor of a statutory subrogee against a third party. A statutory subrogee's subrogation interest includes past payments of compensation and medical benefits and estimated future values of compensation and medical benefits arising out of an injury to or disability or disease of a claimant.
* * *
 "(C) The right of subrogation under this chapter is automatic, regardless of whether a statutory subrogee is joined as a party in an action by a claimant against a third party. A statutory subrogee may assert its subrogation rights through correspondence with the claimant and the third party or their legal representatives. A statutory subrogee may institute and pursue legal proceedings against a third party either by itself or in conjunction with a claimant. If a claimant disputes the validity or amount of an asserted subrogation interest, the claimant shall join the statutory subrogee as a necessary party to the action against the third party.
 "(D) The entire amount of any settlement or compromise of an action or claim is subject to the subrogation right of a statutory subrogee, regardless of the manner in which the settlement or compromise is characterized. Any settlement or compromise that excludes the amount of compensation or medical benefits shall not preclude a statutory subrogee from enforcing its rights under this section. The entire amount of any award or judgment is presumed to represent compensation and medical benefits and future estimated values of compensation and medical benefits that are subject to a statutory subrogee's subrogation rights unless the claimant obtains a special verdict or jury interrogatories indicating that the award or judgment represents different types of damages.
 "(E) Subrogation does not apply to the portion of any judgment, award, settlement, or compromise of a claim to the extent of a claimant's attorney's fees, costs, or other expenses incurred by a claimant in securing the judgment, award, settlement, or compromise, or the extent of medical, surgical, and hospital expenses paid by a claimant from the claimant's own resources for which reimbursement is not sought. No additional attorney's fees, costs, or other expenses in securing any recovery may be assessed against any subrogated claims of a statutory subrogee."