[Cite as *Toledo v. State*, 2018-Ohio-4534.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

City of Toledo, et al.

        Appellees

v.

State of Ohio, et al.

        Appellants

Court of Appeals No.    L-18-1011
                       L-18-1016

Trial Court No.      CI0201702028
                  CI0201702599

**<u>DECISION AND JUDGMENT</u>**

Decided:  November 9, 2018

* * * * *

Dale R. Emch, Law Director, and Thomas E. Puffenberger, for appellee,
City of Toledo.

Beth A. Tischler, Law Director, for appellees, City of Maumee, City of Sylvania,
City of Napoleon, and City of Perrysburg.

Michael DeWine, Ohio Attorney General, Sarah E. Pierce and Renata Y. Staff,
Assistant Attorney Generals, for appellant, State of Ohio.

J. Philip Calabrese, Kathleen M. Trafford, and L. Bradfield Hughes, Andrew C.
Emerson, for appellant, CTIA.

* * * * *

**MAYLE, P.J.**

{¶ 1} In this consolidated appeal, defendant-appellant, the state of Ohio, and intervenor-appellant, CTIA –the Wireless Association, appeal the December 19, 2017 judgment of the Lucas County Court of Common Pleas, denying their motions for summary judgment and granting summary judgment to plaintiffs-appellees, the cities of Toledo, Maumee, Napoleon, Sylvania, and Perrysburg. For the reasons that follow, we affirm the trial court judgment.

## I. Background

{¶ 2} On May 17, 2016, 2016 Am.S.B. No. 331 was introduced by the Ohio Senate, proposing to amend and enact numerous provisions to R.C. Chapter 956 (regulation and licensing of dog kennels). The stated purpose of the bill was "to regulate the sale of dogs from pet stores and dog retailers and to require the Director of Agriculture to license pet stores."

{¶ 3} On May 25, 2016, the Senate passed the bill after expanding it slightly "to regulate the sale of dogs from pet stores and dog retailers, to require the Director of Agriculture to license pet stores, to revise the civil penalties applicable to dog breeders and other specified entities, and to make an appropriation." It was introduced to the House of Representatives on May 31, 2016.

{¶ 4} After stagnating in the House for several months, 2016 Am.Sub.S.B. No. 331 ("S.B. 331") eventually emerged from the House Finance Committee on December 7, 2016, with proposed amendments and enactments to R.C. Chapters 956, 959 (offenses

2.

relating to domestic animals), 1717 (humane societies), 4111 (minimum fair wage standards), 4113 (miscellaneous labor provisions), and 4939 (use of municipal public way).  The stated purpose of the bill was substantially expanded as follows:

> [T]o regulate the sale of dogs from pet stores and dog retailers, to require the Director of Agriculture to license pet stores, and to revise the civil penalties applicable to dog breeders and other specified entities; to govern construction and attachment activities related to micro wireless facilities in the public way; to prohibit political subdivisions from establishing minimum wage rates different from the rate required by state law; to generally grant private employers exclusive authority to establish policies concerning hours and location of work, scheduling, and fringe benefits, unless an exception applies; to prohibit a person from engaging in sexual conduct with an animal and related acts, to provide for the seizure and impoundment of an animal that is the subject of a violation, and to authorize a sentencing court to require an offender to undergo psychological evaluation or counseling; to prohibit and establish an increased penalty for knowingly engaging in activities associated with cockfighting, bearbaiting, or pitting an animal against another; to remove the residency requirement for the appointment of an agent to a county humane society; and to make an appropriation.

3.

{¶ 5} This version of the bill was passed by the House, approved by the Senate, and signed into law by Governor John Kasich on December 19, 2016, with an effective date of March 21, 2017.

{¶ 6} In separate actions, the city of Toledo and the cities of Maumee, Napoleon, Sylvania, and Perrysburg ("the cities"), filed complaints against the state of Ohio for declaratory and injunctive relief, seeking to invalidate S.B. 331. The cities' cases were consolidated on May 8, 2017. The cities raised a number of reasons to invalidate the bill. Pertinent to our discussion here, they claimed that it violates the one-subject rule of Article II, Section 15(D) of the Ohio Constitution.

{¶ 7} On July 12, 2017, the trial court granted a motion by CTIA-the Wireless Association ("CTIA") to intervene in this action. CTIA "represents diverse stakeholders in the wireless industry," and claimed that those stakeholders would be impacted by the amendments and enactments to R.C. Chapter 4939. CTIA had been permitted to intervene in a number of similar suits filed in Cuyahoga, Franklin, Hamilton, and Summit counties. *See City of Cleveland v. State of Ohio,* Cuyahoga C.P. No. CV-17-877584; *City of Bexley v. State of Ohio,* Franklin C.P. No. 17CV-2672, 92 N.E.3d 397 (2017); *City of Cincinnati v. State of Ohio,* Hamilton C.P. No. A1701966; *City of Hudson v. State of Ohio,* Summit C.P. No. CV-2017-03-1103.

{¶ 8} All parties filed motions for summary judgment on the narrow issue of whether S.B. 331 violates the one-subject rule of Article II, Section 15(D) of the Ohio Constitution. In a judgment journalized on December 19, 2017, the trial court found that

4.

the bill does violate the one-subject rule, and it granted summary judgment in favor of the cities and against the state and CTIA. It declared S.B. 331 unconstitutional and incapable of being severed.

{¶ 9} The state and CTIA both appealed. The state assigns the following error for our review:

The trial court erred when it invalidated Senate Bill 331 under Article II, Section 15(D) of the Ohio Constitution, commonly referred to as the single-subject rule.

CTIA assigns the following errors:

1. The trial court erred in ruling that 2017 Sub. S.B. No. 331 ("S.B. 331") violates Article II, Section 15(D) of the Ohio Constitution (the "single-subject rule"). (*See* December 18, 2017 Opinion and Judgment Entry ("Decision") at 5-17, attached hereto as Appendix A.)

2. The trial court erred in invalidating provisions within S.B. 331 related to the statewide regulation of micro-wireless equipment pursuant to its ruling that S.B. 331 violates the single-subject rule. (*See* Decision at 19-20.)

## II. Standard of Review

{¶ 10} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129,

5.

572 N.E.2d 198 (9th Dist.1989). The motion may be granted only when it is demonstrated:

> (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67, 375 N.E.2d 46 (1978), Civ.R. 56(C).

{¶ 11} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 526 N.E.2d 798 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79, 463 N.E.2d 1246 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304, 733 N.E.2d 1186 (6th Dist.1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826,

6.

675 N.E.2d 514 (8th Dist.1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 201 (1986).

### III.  Law and Analysis

{¶ 12} The state's single assignment of error and CTIA's first assignment of error both challenge the trial court's determination that S.B. 331 violates the one-subject rule of Article II, Section 15(D) of the Ohio Constitution.  CTIA's second assignment of error challenges the trial court's decision invalidating the provisions of S.B. 331 related to the statewide regulation of micro-wireless equipment.  We begin by addressing the one-subject rule challenge.  We next address the trial court's decision invalidating the provisions of the bill impacting CTIA.

### A.  "No bill shall contain more than one subject."

{¶ 13} Article II, Section 15(D) of the Ohio Constitution provides that "No bill shall contain more than one subject, which shall be clearly expressed in its title."  The rule is designed to prevent logrolling, "which occurs when legislators combine disharmonious proposals in a single bill to ensure passage of proposals that might not have won acceptance on their own." *State ex rel. Ohio Civ. Serv. Emp. Assn. v. State*, 146 Ohio St.3d 315, 2016-Ohio-478, 56 N.E.3d 913, ¶ 15, citing *State ex rel. Dix v. Celeste*, 11 Ohio St.3d 141, 142-143, 464 N.E.2d 153 (1984).  The one-subject rule is mandatory, however, courts must "liberally construe the term 'subject' for purposes of the rule." *Id.* at ¶ 16, citing *State ex. rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451, 498, 715 N.E.2d 1062 (1999).

7.

**{¶ 14}** The one-subject rule does not prohibit lawmakers from passing a bill addressing a plurality of topics; it prohibits them from passing a bill containing "a disunity of subjects." *Id.* at ¶ 17, citing *State ex rel. Hinkle v. Franklin Cty. Bd. of Elections*, 62 Ohio St.3d 145, 148, 580 N.E.2d 767 (1991). That a bill addresses multiple topics is not fatal so long as there exists a common purpose or relationship between the topics. *Id.*, citing *Hoover v. Franklin Cty. Bd. of Commrs.*, 19 Ohio St.3d 1, 6, 482 N.E.2d 575 (1985). The Ohio Supreme Court has explained that "[o]nly when there is no practical, rational or legitimate reason for combining provisions in one act will we find a one-subject-rule violation." *Id.*, quoting *Dix* at 145. To that end, the court has refused to invalidate statutes under the one-subject rule unless they contain "'a manifestly gross and fraudulent violation.'" *Id.*

**{¶ 15}** It is well-established that we must presume the constitutionality of lawfully enacted legislation. *Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, 951 N.E.2d 405, ¶ 24. "[B]efore a statute is struck down 'it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.'" *Id.*, quoting *State ex rel. Dickman v. Defenbacher*, 164 Ohio St. 142, 128 N.E.2d 59 (1955), paragraph one of the syllabus. We examine S.B. 331 with these principles in mind.

### B. "Blatant disunity" exists among the provisions of S.B. 331.

**{¶ 16}** S.B. 331 as originally introduced in the Senate proposed numerous amendments and enactments to only R.C. Chapter 956—the chapter of the Revised Code governing the regulation and licensing of dog kennels. The bill that ultimately was

8.

approved and signed into law added diverse new provisions, including provisions governing construction and attachment activities related to micro wireless facilities in the public way; prohibiting political subdivisions from establishing minimum wage rates different from the rate required by state law; granting private employers exclusive authority to establish policies concerning various terms of employment; criminalizing sexual conduct with animals; prohibiting cockfighting, bearbaiting, or pitting animals against each other; removing residency requirements for county humane society agents; and appropriating funds for programs involving animal health and food safety.

{¶ 17} The state argues that the topics of S.B. 331 are unified by a common purpose: "to standardize the manner in which businesses are regulated in Ohio to avoid a patchwork of local ordinances." Similarly, CTIA argues that S.B. 331 "reflects a single legislative public-policy determination—that economic development in Ohio is better served when certain types of business activity are freed from a patchwork quilt of differing local regulations, and instead subjected to a uniform statewide rule." CTIA claims that while the Senate initially chose to apply this policy determination solely to the regulation of dog sales, the House chose to expand it to "three additional business activities"—"minimum wages, employment conditions, and micro-wireless equipment installation."

{¶ 18} The city of Toledo insists, however, that S.B. 331 addresses a "hodgepodge of subjects" and "fails to provide any glimmer of a unifying theme." The other plaintiff-cities maintain that "[t]he assertion that the purpose is business regulation or uniform

9.

business regulation throughout the state is not clearly identified in the subject of the bill and is so strained that it lacks legitimacy."

{¶ 19} The trial court agreed with the cities. It found that "[t]he final version of S.B. 331 embodies a jumble of incongruous provisions governing disparate activities and relations across several substantive areas of law without any suggestion of a single subject, overreaching purpose, or unifying scheme that brings them into common focus." It further found that "the proposed hypothetical subjects in this case are unreasonably broad and capacious in their attempt to conjoin the disparate matters embraced by S.B. 331." And, citing *Sheward*, 86 Ohio St.3d 451, 499, 715 N.E.2d 1062, it concluded that the proposed hypothetical subjects are "'a ruse by which to connect blatantly unrelated topics.'"

{¶ 20} The trial court's conclusion is in accord with the conclusions reached by the Cuyahoga, Franklin, and Hamilton County common pleas courts, which considered the same issue. The trial court in *City of Cleveland,* Cuyahoga C.P. No. CV-17-877584 (Dec. 6, 2017), rejected the defendants' "broad concept of single-subject" and found "no practical, rational, or legitimate reason for combining these provisions into one act." *Id.* at * 2. It concluded that "[p]rohibitions against pet sales, animal fighting, and sexual acts with animals share nothing in common with small cell wireless facilities and equipment or statewide minimum wage provisions and work condition policies," and it declared the combination of these subjects a "classic example of logrolling." *Id.*

10.

**{¶ 21}** Similarly, in *City of Bexley*, Franklin C.P. No. 17CV-2672, 92 N.E.3d 397 (2017), the Franklin County trial court concluded that "a blatant disunity exists" and "[a] constitutional violation has been demonstrated." *Id.* at 406. It reasoned that "[a]lthough defendants argue that most of S.B. 331 fits neatly under an overarching theme of eliminating a patchwork quilt of municipal business regulations, even that generous view of the 'subject' fails to capture all this diversity." *Id.* at 405. It found that "were a court to accept that broad concept of a single 'subject' it would eviscerate the Constitutional rule." *Id.*

**{¶ 22}** And the Hamilton County trial court in *City of Cincinnati,* Hamilton C.P. No. A1701966 (Sept. 26, 2017), found "beyond a reasonable doubt, that blatant disunity exists" in the subject-matter of the bill that ultimately passed. *Id.* at * 6. The court stated that it could find "'no practical, rational or legitimate reason' for combining these provisions into one act." *Id.* It posited that under the unifying subject identified by the defendants—the public-policy determination that certain business activities should be subjected to a uniform statewide rule—"the General Assembly would have been free to add virtually any topic to this bill, as long as there was a general statewide interest requiring statewide regulation, which in the Court's opinion would effectively render the one-subject rule meaningless." *Id.* at * 3.

**{¶ 23}** Only the Summit County trial court reached a different conclusion. It concluded that the bill's one subject was to "limit * * * the power of municipal corporations to exercise their self-governing authority regarding the matters covered by

11.

Substitute Senate Bill No. 331." *City of Hudson v. State of Ohio,* Summit C.P. No. CV-2017-03-1103, *16 (July 7, 2017). It found that only four of the 16 amendments and 25 enactments achieved by passage of S.B. 331 did not fall into this single purpose of the bill.

{¶ 24} The Ohio Supreme Court has on numerous occasions considered claims of one-subject violations. It explained in *Sheward*, 86 Ohio St.3d 451, 499, 715 N.E.2d 1062:

These cases can be perceived as points along a spectrum. At one end, closely related topics unite under a narrowly denominated subject. As the topics embraced in a single act become more diverse, and as their connection to each other becomes more attenuated, so the statement of subject necessary to comprehend them broadens and expands. There comes a point past which a denominated subject becomes so strained in its effort to cohere diverse matter as to lose its legitimacy as such. It becomes a ruse by which to connect blatantly unrelated topics. At the farthest end of this spectrum lies the single enactment which endeavors to legislate on all matters under the heading of "law."

{¶ 25} In *Sheward,* the court examined Am.Sub.H.B. No. 350, a bill "purport[ing] to encompass 'changes in the laws pertaining to tort and other civil actions.'" *Id.* at 494. The bill "attempt[ed] to combine the wearing of seat belts with employment discrimination claims, class actions arising from the sale of securities with limitations on

12.

agency liability in actions against a hospital, recall notification with qualified immunity for athletic coaches, actions by a roller skater with supporting affidavits in a medical claim, and so on." *Id.* at 499. The court found that the substance and content of the provisions were so diverse and the commonality of purpose or relationship so attenuated that the statement of subject necessary to encompass them was so broad and expansive that any suggestion of unity of subject matter was illusory. It commented that if it accepted the notion that "tort and other civil actions" was a legitimate subject under which to combine the provisions of the bill, "the General Assembly could conceivably revamp all Ohio law in two strokes of the legislative pen -- writing once on civil law and again on criminal law." *Id.* at 499.

{¶ 26} In this case, we find that the topics embraced in S.B. 331 are so diverse, and their connection to each other so attenuated, that the statement of subject purporting to connect them—the need for uniform statewide regulation—is strained to the point of losing its legitimacy. We agree with the well-reasoned decision of the trial court, and we find beyond a reasonable doubt that S.B. 331 violates the one-subject rule contained in Article II, Section 15(D) of the Ohio Constitution and is, therefore, unconstitutional.

{¶ 27} We find the state's assignment of error and CTIA's first assignment of error not well-taken.

### C. With no discernible primary purpose, severance is not possible.

{¶ 28} Having found that S.B. 331 violates the one-subject rule, the trial court considered whether the severance doctrine could be applied to save portions of the bill. It

determined that "application of the severance doctrine to save any portion of S.B. 331 is unwarranted because there is no discernible primary subject of the bill."

{¶ 29} Although the state does not specifically assign error in the trial court's refusal to sever portions of S.B. 331, it argues on appeal that the cities in their complaints sought to enjoin only the micro-wireless and minimum wage provisions of the bill, therefore, the trial court "erred by reaching unchallenged provisions of S.B. 331 which Plaintiffs had not even alleged standing to challenge." CTIA continues to argue that the primary purpose of the bill was to relieve businesses from burdensome local regulation, and insists that the trial court erred by failing to narrowly tailor its decision by striking provisions of the bill that are related to this primary purpose. And CTIA, like the state, challenges the cities' standing. It quotes *Preterm-Cleveland, Inc. v. Kasich*, 153 Ohio St.3d 157, 2018-Ohio-441, 102 N.E.3d 461, ¶ 30, and argues that "a party challenging multiple provisions in an enactment of the General Assembly as violating the Single Subject Clause must prove standing as to each provision the party seeks to have severed from the enactment by demonstrating it suffered or is threatened with direct and concrete injury in a manner or degree different from that suffered by the general public because of each provision."

{¶ 30} In *State ex rel. Hinkle*, 62 Ohio St.3d 145, 580 N.E.2d 767, the Ohio Supreme Court provided the authority "to sever portions of an act that violate the one-subject rule in order 'to cure the defect and save the portions * * * which do relate to a single subject.'" This requires the court "to ascertain which subject is primary and which

subject is an unrelated add-on. The former is then saved by severing the latter." *Id.* Where the court can discern no "primary" subject matter of the bill, severance is not possible and the bill must be held unconstitutional in its entirety. *Akron Metro. Hous. Auth. Bd. of Trustees v. State*, 10th Dist. Franklin No. 07AP-738, 2008-Ohio-2836, ¶ 27.

{¶ 31} We agree with the trial court that while the originally-introduced legislation had a discernible primary subject, S.B. 331 as approved does not. It was, therefore, not possible to save any provisions of the bill.

{¶ 32} And as to the challenge to the cities' standing, the cases cited by the state and CTIA all involved private litigants—not cities and municipalities whose authority to pass laws has been stymied by legislation. Also, to the extent that the state claims that "Plaintiffs did not even ask for the relief that the trial court granted," we observe that the cities in their complaints challenge the bill in its entirety. *See, e.g.,* the city of Toledo's complaint at ¶ 69 ("S.B. 331 is unconstitutional *in toto* as it was passed in violation of the single-subject rule * * *."); paragraph A of the city of Toledo's prayer for relief ("Toledo demands * * * [o]n its First Claim for Relief, a declaration that the S.B. 331 is unconstitutional as it was passed in violation of the single-subject rule * * *."). We find no merit to the position that the cities lack standing.

{¶ 33} Accordingly, we find CTIA's second assignment of error not well-taken.

## IV. Conclusion

{¶ 34} We find beyond a reasonable doubt that blatant disunity exists in the subject-matter of S.B. 331, and the bill, therefore, violates the one-subject rule of Article

II, Section 15(D) of the Ohio Constitution. And because the bill lacks a discernible primary subject, the severance doctrine cannot operate to save any portion of it. Accordingly, we find the state's sole assignment of error and CTIA's two assignments of error not well-taken. We affirm the December 19, 2017 judgment of the Lucas County Court of Common Pleas. The costs of this appeal are assessed to the state of Ohio and CTIA under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.